UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

STEPHON P.,

              Plaintiff,

        -v-                       5:20-CV-820

COMMISSIONER OF
SOCIAL SECURITY,

              Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                      OF COUNSEL:

LAW OFFICES OF KENNETH      KENNETH R. HILLER, ESQ.
  HILLER, PLLC
Attorneys for Plaintiff
6000 North Bailey Avenue, Suite 1A
Amherst, NY 14226

SOCIAL SECURITY                LOUIS JOHN GEORGE, ESQ.
  ADMINISTRATION              Special Ass't U.S. Attorney
Attorneys for Defendant
J.F.K. Federal Building, Room 625
15 New Sudbury Street
Boston, MA 02203

DAVID N. HURD
United States District Judge

## MEMORANDUM–DECISION & ORDER

## I. INTRODUCTION

On July 20, 2020, plaintiff Stephon P.[1] ("plaintiff" or "claimant") filed this action seeking review of the final decision of defendant Commissioner of Social Security ("Commissioner" or "defendant") denying his application for Supplemental Security Income ("SSI") under the Social Security Act (the "Act").

The Commissioner has filed a certified copy of the Administrative Record and both parties have briefed the matter in accordance with General Order 18, which provides that an appeal taken from the Commissioner's final decision denying benefits will be treated as if the parties have filed cross-motions for a judgment on the pleadings. *See* FED. R. CIV. P. 12(c).

Plaintiff's appeal will be considered on the basis of these submissions without oral argument.

## II. BACKGROUND

On January 20, 2017, plaintiff applied for SSI alleging that his anxiety, depression, sleep apnea, back issues, memory loss, and attention-deficit

---

[1] In accordance with a May 1, 2018 memorandum issued by the Judicial Conference's Committee on Court Administration and Case Management and adopted as local practice in this District, only claimant's first name and last initial will be mentioned in this opinion.

disorder rendered him disabled beginning on January 1, 2012. R. at 177, 183.[2]

Plaintiff's claim was initially denied on March 23, 2017. R. at 89–94. At his request, a video hearing was held before Administrative Law Judge ("ALJ") Charlie Johnson on April 24, 2019.[3] *Id*. at 28–72. The ALJ conducted the hearing from Baltimore, Maryland. *Id*. Plaintiff, represented by attorney Joseph Paladino, appeared and testified by video from Syracuse, New York. *Id*. The ALJ also heard testimony from Vocational Expert Rachel Duchon. *Id*.

On June 26, 2019, the ALJ issued a written decision denying plaintiff's application for benefits. R. at 10–20. This decision became the final decision of the Commissioner on May 21, 2020, when the Appeals Council denied plaintiff's request for review. *Id*. at 1–3.

## III. **LEGAL STANDARD**

The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or

---

[2] Citations to "R." refer to the Administrative Record. Dkt. No. 10.

[3] During the hearing, plaintiff amended his alleged onset date to January 20, 2017, the date on which he applied for benefits. R. at 10.

can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

To qualify as disabled within the meaning of this definition, the Act requires that a claimant's:

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

The ALJ follows a five-step sequential evaluation process to decide whether a claimant is disabled. 20 C.F.R. § 404.1520.[4] At step one, the ALJ determines whether the claimant is currently engaged in "substantial gainful activity." § 404.1520(a)(4)(i). If so, the claimant is not disabled regardless of his medical condition or other factors. § 404.1520(b).

If the claimant is not engaged in substantial gainful activity, then step two requires the ALJ to determine whether the claimant has a "severe" impairment or combination of impairments; *i.e.*, a medically determinable

---

[4] Section 404.1520 sets forth the five-step evaluation used for DIB claims. A parallel set of regulations govern SSI applications. *See* 20 C.F.R. § 416.920(a)(4).

- 4 -

condition that "significantly limits" his physical or mental ability to do basic work activities. § 404.1520(c).

If the claimant suffers from a severe impairment or combination of impairments, then step three requires the ALJ to determine whether the impairment(s) meet or equal an impairment specifically listed in Appendix 1 of the Regulations (the "Listings"). § 404.1520(d). If the claimant's severe impairment(s) meet or equal one or more of the Listings, then the claimant is presumed to be disabled regardless of any other factors. § 404.1520(a)(4)(iii).

If the claimant is not presumed disabled under one or more of the Listings, then step four requires the ALJ to assess whether—despite the claimant's severe impairment(s)—he has the residual functional capacity ("RFC") to perform his "past relevant work." § 404.1520(e)–(f). If so, the claimant is not disabled. § 404.1520(a)(4)(iv).

Finally, if the claimant cannot perform his past relevant work, the Commissioner must determine if the claimant's RFC, in combination with his age, education, and work experience, permits the claimant to do any other work in the national economy. § 404.1520(a)(4)(v), (f)–(g).

The burden of proof for the first four steps is on the claimant. *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996). However, if the claimant shows he cannot perform his past relevant work at step four, the burden shifts to the Commissioner for step five. *Id.*

The Act further provides for judicial review of "any final decision . . . made after a hearing" by the Social Security Administration ("SSA" or the "Agency"). 42 U.S.C. § 405(g). However, the scope of this review is limited to determining whether (1) the Commissioner applied the correct legal standard to his analysis and, if so, (2) whether the final decision is supported by "substantial evidence." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (per curiam) (cleaned up).

"Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (cleaned up). "If the reviewing court finds substantial evidence to support the Commissioner's final decision, that decision must be upheld, even if substantial evidence supporting the claimant's position also exists." *Morales v. Berryhill*, 484 F. Supp. 3d 130, 140 (S.D.N.Y. 2020) (citation omitted).

However, this "deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003). Thus, "where there is a reasonable basis for doubting whether the Commissioner applied the appropriate legal standards," the decision should not be affirmed. *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987). This is so regardless of whether or not the decision is otherwise supported by "substantial evidence." *See id.*

## IV. **DISCUSSION**

The ALJ applied the five-step analysis to find that: (1) plaintiff had not engaged in substantial gainful activity since January 20, 2017, the amended alleged onset date; (2) plaintiff's asthma, depression, and anxiety were "severe" impairments within the meaning of the Regulations; and that (3) these impairments, whether considered individually or in combination, did not meet or equal any of the Listings. R. at 13.

At step four, the ALJ determined that plaintiff retained the RFC to perform "a full range of work at all exertional levels" with certain environmental and functional limitations:

> the claimant must avoid concentrated exposure to respiratory irritants. Emotionally, the claimant is limited to simple, routine, and repetitive tasks. Such tasks must not exceed one or two steps. The claimant is limited to simple decisions and simple instructions. He cannot perform fast-paced or production work. He is also limited to frequent interaction with other people in a work environment.

R. at 15.

Next, the ALJ determined that plaintiff had no past relevant work. R. at 19. However, after considering plaintiff's age, education, and RFC in light of the Vocational Expert's testimony, the ALJ concluded that plaintiff could still perform such representative jobs as a "store laborer, auto detailer, and cleaner." *Id.* at 19–20. Because these jobs existed in the sufficient numbers

in the national economy, the ALJ concluded that plaintiff was not disabled between January 20, 2017, the amended alleged onset date, through June 26, 2019, the date of her written decision. *Id.* at 20. Accordingly, the ALJ denied plaintiff's application for benefits. *Id.*

### A. **Plaintiff's Appeal**

Plaintiff contends the ALJ (1) erred at steps two, three, and four by failing to discuss, weigh, or otherwise evaluate a January 16, 2019 medical opinion rendered by Jeanne Shapiro, Ph.D; and (2) erred at step four by improperly evaluating Dr. Shapiro's prior opinion from March 2017. Pl.'s Mem., Dkt. No. 11-1 at 9–16. In opposition, the Commissioner concedes that the ALJ did not "explicitly" address Dr. Shapiro's January 2019 opinion but argues that the ALJ's failure to do so was harmless error. Def.'s Mem., Dkt. No. 16 at 7–12.

Under the version of the Regulations that governs plaintiff's claim for benefits, the Commissioner was obligated to "evaluate medical opinion [she] receive[s]." 20 C.F.R. 416.927(c).[5] Consistent with this blanket command, an ALJ's failure to "explicitly review and weigh" an opinion in violation of this regulatory promise ordinarily results in a finding of legal error and, consequently, a remand for a new hearing. *See, e.g.*, *Barrett v. Colvin*, 211 F.

---

[5] On January 18, 2017, the SSA revised the rules regarding the way it evaluates evidence from medical sources. The new Regulations apply to claims filed on or after March 27, 2017. Because plaintiff's claim was filed on January 20, 2017, the prior Regulations govern this appeal. Neither party argues otherwise.

Supp. 3d 567, 582 (W.D.N.Y. 2016). On the other hand, though, courts have also recognized that the "failure to consider or weigh an opinion may be harmless error where consideration of that opinion would not have changed the outcome." *Gemmell v. Comm'r of Soc. Sec.*, 2017 WL 3328237, at \*5 (N.D.N.Y. Aug. 2, 2017) (Hummel, M.J.).

Upon review, caution counsels remand. To be sure, a finding of harmless error is sometimes appropriate when the ALJ overlooks a piece of evidence that can safely be considered cumulative or when it is obvious that even explicit consideration of the contested material would have failed to impact the ALJ's sequential analysis.

But that is not clearly the case here. At the April 24, 2019 video hearing before the ALJ, plaintiff's counsel specifically advanced the contention that Dr. Shapiro's January 2019 opinion supported a finding of *per se* disability under Listing 12.05 at step three based on, *inter alia*, Dr. Shapiro's finding that plaintiff's full scale IQ was "only 62." R. at 31–33.

This argument by plaintiff's counsel actually resulted in a brief colloquy with the ALJ in which she confirmed that Dr. Shapiro's January 16, 2019 opinion that included the low IQ score was, in fact, part of the administrative record. *Id.* at 32. Yet any analysis of the 2019 opinion or of Dr. Shapiro's findings is conspicuously absent from the ALJ's later written decision.

The Commissioner's response to this conspicuous omission is to argue that evidence of a low IQ score "does not carry a talismanic quality that requires that an individual be deemed per se disabled." Def.'s Mem. at 9.  And that is true as a general matter of Social Security law.  *See, e.g., Talavera v. Astrue*, 697 F.3d 145, 153 (2d Cir. 2012).  Indeed, the Regulations recognize that "persons with an IQ in the 60s (or even lower) may still be able to hold a full-time job, and are therefore not disabled, if their adaptive functioning is sufficiently intact."  *Id.* (cleaned up).

The problem with the Commissioner's defense of this oversight is that just the opposite might also be true in this case—plaintiff's low IQ score, in connection with other record evidence, might well be sufficient to find him *per se* disabled at step three of the sequential analysis.  *Cf. Kaliegh O. v. Comm'r of Soc. Sec.*, 2020 WL 5751171, at *5 (N.D.N.Y. Sept. 25, 2020) (Dancks, M.J.) (rejecting harmless error argument where ALJ failed to analyze opinion documenting low IQ score because "there is at least a reasonable likelihood that a different result could be reached if the ALJ properly considered and weighed Dr. Shapiro's report").

And even if it turned out that a Listing was not satisfied, explicit consideration of plaintiff's low IQ score in combination of other evidence might well have led the ALJ to assess a more restrictive RFC.  In short, the ALJ's failure to analyze a medical opinion that was specifically flagged

during the hearing as central to plaintiff's disability claim leaves this Court to try to determine in the first instance whether one or more of Dr. Shapiro's findings could have, or should have, altered the analysis.

But that is not for the Court to do. The Regulations entrust the SSA's representatives with fact-finding and reason-giving duties. *See, e.g.*, *Micheli v. Astrue*, 501 F. App'x 26, 29 (2d Cir. 2012) (summary order) ("[I]t is the sole responsibility of the ALJ to weigh all medical evidence and resolve any material conflicts in the record."). Because those representatives specialize in this convoluted area of administrative law, a remand is appropriate so that they may explicitly consider and evaluate the findings in Dr. Shapiro's January 2019 opinion. Accordingly, this matter will be remanded to the Commissioner.

## IV. <u>CONCLUSION</u>

On remand, the Commissioner should explicitly consider the findings in Dr. Shapiro's January 2019 opinion beginning at step two of the sequential analysis. The Commissioner should also explicitly analyze plaintiff's low IQ score and any other evidence of low intellectual functioning (including but not limited to plaintiff's academic records) in relation to his functional limitations to determine whether he meets the requirements of Listing 12.05 or, relatedly, whether this evidence warrants a more restrictive RFC finding.

Therefore, it is

ORDERED that

1. The Commissioner's motion for a judgment on the pleadings is DENIED;

2. Plaintiff's motion for a judgment on the pleadings is GRANTED;

3. The Commissioner's final decision is VACATED; and

4. This matter is REMANDED for further administrative proceedings pursuant to Sentence Four.

IT IS SO ORDERED.

Dated: January 4, 2022
         Utica, New York.

David N. Hurd
U.S. District Judge